UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KAY T.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C18-5420-MLP

ORDER

## I.     INTRODUCTION

Plaintiff seeks review of the partial denial of his application for Supplemental Security Income and the denial of his application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by, with respect to the period before September 2015, (1) discounting certain medical opinions, (2) discounting his subjective testimony, and (3) discounting lay statements written by agency personnel and Plaintiff's parents.[1] (Dkt. # 13 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

---

[1] Plaintiff's opening brief also assigns error to the ALJ's residual functional capacity ("RFC") assessment and step-five findings, but in doing so reiterates arguments made elsewhere. (Dkt. # 13 at 16-17.) Therefore, these issues need not be addressed separately.

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1961, has an 11th-grade education, and has worked as a carpet installer, cook, and bartender. AR at 285, 577. Plaintiff was last gainfully employed in 2007. *Id.* at 840.

In February 2011, Plaintiff applied for benefits, alleging disability as of December 31, 2005.[2] AR at 260-76. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 193-207. After the ALJ conducted a hearing on July 11, 2012 (*id.* at 110-34), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 20-31. Plaintiff sought judicial review of the ALJ's decision, and this Court granted the parties' stipulation to reverse the ALJ's decision and remanded for further administrative proceeding. *Id.* at 958-59.

A different ALJ held a hearing on May 31, 2017 (AR at 835-65), and subsequently found Plaintiff not disabled before September 1, 2015, but disabled as of that date. *Id.* at 809-25. Utilizing the five-step disability evaluation process,[3] the ALJ found:

Step one: Plaintiff had not engaged in substantial gainful activity since the alleged onset date.

Step two: Plaintiff's mild foot and hand degenerative joint disease; degenerative disc disease and scoliosis; chronic pain disorder; chronic obstructive pulmonary disease; hip osteoarthritis and femoroacetabular impingement; torticollis; attention deficit disorder; anxiety disorder; personality disorder, not otherwise specified; post-traumatic stress disorder; schizoaffective disorder, bipolar type; and cognitive disorder, not otherwise specified, are severe impairments.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[4]

RFC: Before September 1, 2015, Plaintiff could perform light work, with additional limitations: he was limited to lifting and/or carrying up to 20 pounds occasionally and 10 pounds frequently. He could stand and/or walk up to six hours in an eight-hour workday, and sit up to six hours in an eight-hour workday. He could occasionally climb, kneel, and

---

[2] Plaintiff subsequently amended his alleged onset date to September 29, 2009. AR at 115.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

crouch. He was limited to simple, routine, repetitive tasks consistent with unskilled work, and limited to low-stress work (work requiring few decisions or changes). He could have no public contact, occasional superficial contact with co-workers, and occasional contact with supervisors. He could perform at a standard or ordinary pace, but not at a strict production rate pace in which he would have no control over the speed of the work. He needed to avoid concentrated exposure to hazards and pulmonary irritants.

Beginning on September 1, 2015, he had the same RFC as above, but with an additional limitation: he would be expected to be off-task 15-20 percent of the workday, and thus less productive than other co-workers.

Step four: Plaintiff could not perform his past work at any time.

Step five: Before September 1, 2015, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, and thus he was not disabled during that time period. Beginning on September 1, 2015, there were no such jobs that he could perform, and thus his disability began on that date.

*Id*. at 809-25.

Plaintiff appealed the final decision of the Commissioner to this Court.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err in Assessing Certain Medical Opinions

Plaintiff challenges the ALJ's assessment of a number of psychological opinions, each of which the Court will address in turn.

### *1. Legal Standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

### 2. Edward P. Case, M.D.

Dr. Case, Plaintiff's treating psychiatrist, completed a form medical source statement in April 2012, rating Plaintiff's limitations in a variety of cognitive and social categories. AR at 757-60. Dr. Case opined that Plaintiff had several marked limitations in his understanding/memory, concentration/persistence, and adaptation abilities. *Id*.

The ALJ summarized Dr. Case's opinion, explaining that he gave significant weight to the mild and moderate limitations identified by Dr. Case, and accounted for the marked limitations in understanding/remembering detailed instructions and setting reasonable goals in the RFC assessment. AR at 819-20. The ALJ discounted the other marked limitations as inconsistent with the treatment record. *Id*. at 820. Specifically, the ALJ rejected the marked limitation in the ability to maintain attention/concentration for extended periods as inconsistent with Dr. Case's own notes showing improvement with medication in 2011 and 2012. *Id*. at 820 (citing *id*. at 774-76, 777, 792).

Plaintiff argues that because Dr. Case's opinion was "fully consistent with his clinical findings[,]" the ALJ erred in discounting it. (Dkt. # 13 at 6.) Plaintiff does not address the

specific findings mentioned by the ALJ regarding Plaintiff's improvement with medication. The notes cited by the ALJ reference either normal attention/concentration and/or improvement, either due to medication or discussion in therapy. *See* AR at 774-76, 777, 782. Other treatment notes also document some improvement with medication and/or normal attention/concentration. *See, e.g.*, *id*. at 768, 771, 802, 1194, 1196, 1198, 1199, 1207, 1213-15. Although Dr. Case's treatment notes also document that some symptoms persisted at times despite Plaintiff's use of medication, those symptoms did not longitudinally persist at the marked level, as opined by Dr. Case. The ALJ's finding is supported by substantial evidence and constitutes a specific, legitimate reason to discount Dr. Case's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record); *Thomas*, 278 F.3d at 957 (holding that an ALJ may consider improvement with treatment in discounting physician's opinion).

>    *3.     Brett Trowbridge, Ph.D.*

Dr. Trowbridge examined Plaintiff in December 2009 and completed a DSHS form describing Plaintiff's symptoms and limitations. AR at 577-93. Dr. Trowbridge listed several marked limitations in Plaintiff's cognitive and social functioning. *Id*. at 580.

The ALJ summarized Dr. Trowbridge's opinion and explained that he gave it partial weight, discounting the marked limitations as inconsistent with contemporaneous evidence showing that Plaintiff had "at times good mood, making plans, organizing, and taking care of tenants by making breakfast for all[.]" AR at 819 (citing *id*. at 602). Plaintiff argues that this treatment note is not inconsistent with Dr. Trowbridge's opinion (dkt. # 13 at 7), but the Court disagrees: Dr. Trowbridge found that Plaintiff was socially withdrawn and disorganized, and those findings are inconsistent with the note cited by the ALJ. Other contemporaneous treatment

notes also describe similar findings. *See, e.g.*, AR at 598, 612, 614, 618, 621, 646, 648. Plaintiff has not addressed the specific evidence cited by the ALJ, or provided any support for his assertion that the evidence cited by the ALJ is not inconsistent with Dr. Trowbridge's opinion. The ALJ's finding is supported by substantial evidence and constitutes a specific, legitimate reason to discount Dr. Trowbridge's opinion. *See Tommasetti*, 533 F.3d at 1041.

    *4.*  *Terilee Wingate, Ph.D.*

  Dr. Wingate examined Plaintiff in 2010 and 2013, and completed DSHS form opinions on both occasions describing Plaintiff's symptoms and limitations. AR at 651-58, 1220-1227. In both opinions Dr. Wingate identified moderate and marked cognitive and social limitations. *Id*. at 654-55, 1222.

  The ALJ credited the moderate limitations described by Dr. Wingate, but discounted the more restrictive limitations as inconsistent with the treatment record, which showed more functionality than described by Dr. Wingate and improvement with medication. AR at 819, 820 (citing *id*. at 705, 724, 1218). Plaintiff argues generally that the treatment record is not inconsistent with Dr. Wingate's opinions (dkt. # 13 at 9), but does not address the evidence cited by the ALJ. Plaintiff goes on to admit that he did experience some improvement on medication, but references a treatment note that describes persistent symptoms nonetheless. (Dkt. # 13 at 10 (citing AR at 1214).) Plaintiff does not acknowledge, however, that the treatment note he cited also references Plaintiff's increased alcohol abuse during this time, despite his provider's encouragement to work on his anxiety without using substances. *Id.* at 1213-15. This note therefore does not support Plaintiff's suggestion that his symptoms were not entirely amenable to medication, because the note describes Plaintiff's functioning at a time of increased alcohol

ORDER - 7

abuse. Because the ALJ cited substantial evidence inconsistent with Dr. Wingate's opinions, the ALJ did not err in discounting those opinions. *See Tommasetti*, 533 F.3d at 1041.

     5.  *Tasmyn Bowes, Psy.D.*

Dr. Bowes examined Plaintiff in November 2011 and completed a DSHS form opinion describing his symptoms and limitations. AR at 739-48. Dr. Bowes found Plaintiff to be "[e]xtremely limited" by his mental impairments, and described him as having trouble completing "even [b]asic [activities of daily living]." *Id*. at 742.

The ALJ gave limited weight to Dr. Bowes' opinion, finding it inconsistent with the treatment records in the months before Dr. Bowes' evaluation as well as note from afterward showing he "improved dramatically." AR at 819 (citing *id*. at 771, 774-76, 777). Plaintiff disputes whether he improved "dramatically," citing abnormal findings from within the same treatment note cited by the ALJ for that proposition. (Dkt. # 13 at 11.) Indeed, the treatment note cited by the ALJ does contain some abnormal findings, but the psychiatrist himself described Plaintiff as "improved dramatically" with medication. *Id.* at 777. Thus, the ALJ did not err in quoting a treating psychiatrist's note as evidence inconsistent with Dr. Bowes' opinion, or in discounting Dr. Bowes' opinion in light of inconsistent evidence. *See Tommasetti*, 533 F.3d at 1041.

Because Plaintiff has not identified an error in the ALJ's assessment of the medical opinion evidence, this portion of the ALJ's decision is affirmed.

  **B.**  **The ALJ Did Not Err in Discounting Plaintiff's Testimony**

The ALJ discounted Plaintiff's subjective testimony because (1) his allegations of physical limitations are not supported by the objective medical record, which indicates that any limitations are not disabling; (2) Plaintiff used a walker at times, even though this assistive

device was not prescribed or necessary; (3) Plaintiff's mental symptoms improved with medication; and (4) Plaintiff failed to seek psychiatric care for an extended period of time. AR at 816-17. Plaintiff argues that these reasons are not legally sufficient, and each reason will be addressed in turn.

### 1. *Legal Standards*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

### 2. *Lack of Corroboration*

Plaintiff argues that the ALJ erred in considering whether the medical evidence corroborated his allegations as to physical limitations, and contends that in any event he is unable

to work "primarily due to his mental impairments[,]" rather than physical impairments. (Dkt. # 13 at 13.)

Although the ALJ could not discount Plaintiff's testimony *solely* based on lack of corroboration in the medical record, the ALJ did not do so here because he provided other reasons as well. The ALJ did not err in considering this factor among others as discussed below. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

### 3. Use of Assistive Device

The ALJ cited evidence that Plaintiff used an assistive device without medical necessity. AR at 817 (citing, *e.g.*, *id*. at 1147, 1149). This is a valid reason to discount a claimant's testimony. *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (considering a claimant's use of an assistive device without clear medical indication as one valid credibility consideration).

### 4. Improvement with Medication

The ALJ found that Plaintiff's mental symptoms improved with medication. AR at 817. Plaintiff argues that this is not a valid reason to discount the symptoms that persisted even with medication. (Dkt. # 13 at 13.) Plaintiff does not cite any particular evidence showing that his persistent symptoms were more severe than accounted for in the ALJ's RFC assessment. To the extent that Plaintiff's symptoms were amenable to treatment, the ALJ did not err in discounting his testimony. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.").

*5.     Lack of Treatment for Extended Period*

The ALJ noted that Plaintiff "essentially did not seek psychiatric care between February 2014 and September 2015," and found that this gap in treatment indicates that his symptoms were not as troubling or limiting as he alleged during that time or else he would have continued with his treatment. AR at 817, 818. Plaintiff contends he should not be penalized for exercising poor judgment in failing to seek treatment (dkt. # 13 at 13), but there is no evidence that Plaintiff's failure to seek treatment was caused by his impairments rather than personal preference. As such, the ALJ did not err in discounting his allegations based on that gap in treatment. *See Molina,* 674 F.3d at 1113-14.

Because the ALJ provided multiple legally valid reasons to discount Plaintiff's testimony, this portion of the ALJ's decision is affirmed. Plaintiff's summary of his testimony (dkt. # 13 at 13-14) does not identify any errors in the ALJ's decision or otherwise undermine the Court's conclusion.

**C.     The ALJ Did Not Harmfully Err in Assessing Lay Statements**

Plaintiff raises several challenges to the ALJ's assessment of lay evidence, each of which will be addressed in turn.

*1.     Legal Standards*

An ALJ must provide germane reasons to discount a lay statement. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.").

*2.     Plaintiff's Parents*

The ALJ discounted statements written by Plaintiff's father and mother, written in 2005 and 2011, respectively. AR at 821 (citing *id*. at 301-09, 336-43). The ALJ found that Plaintiff's

parents' statements did not reflect the most Plaintiff could do, and thus are less probative to the ALJ's inquiry. *Id.* at 821. The ALJ also found that Plaintiff's parents were not disinterested third parties, and thus their statements were colored by their affection for Plaintiff. *Id.* Lastly, and "[m]ost importantly," the ALJ found Plaintiff's parents' statements to be inconsistent with the medical opinion evidence prior to the disability onset date. *Id.*

Plaintiff argues that none of these reasons are valid. The Court agrees that the ALJ's discounting of Plaintiff's parents' statements due to their status as family members is invalid. *See Smolen*, 80 F.3d at 1288-89. But the ALJ's other reasons are germane: Plaintiff's parents described what they observed Plaintiff doing, but did not address the most he could do. AR at 302-09, 336-43. Thus, Plaintiff's parents' observations are less probative to the ALJ's determination. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (RFC "is the most you can still do despite your limitations.").

Inconsistency between a lay statement and the medical record is also a germane reason to discount the statements. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."). In this case, Plaintiff's parents described general limitations that contradict the medical record to the extent they suggest disability. For example, Plaintiff's mother described Plaintiff as "[p]hysically, emotionally, and mentally . . . dysfunctional[.]" AR at 341. Plaintiff's father opined that Plaintiff's problems are increasing despite his many prescriptions. AR at 302. The ALJ cited medical evidence showing that Plaintiff retained the ability to perform some work before his disability began (*id.* at 815-21), which contradicts any suggestion by Plaintiff's parents that he was unable to work.

Accordingly, the ALJ's erroneous reason for discounting Plaintiff's parents' statements is

harmless in light of the other valid reasons provided by the ALJ. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

### 3. *Agency Observations*

Plaintiff also suggests that the ALJ erred in failing to address the observations of agency personnel, recorded in agency forms during the application process. *See* AR at 320, 357. The forms reference concentration problems to an unspecified degree. *Id*. The ALJ's RFC assessment includes restrictions that account for concentration deficits. *See id*. at 815. Plaintiff has not shown that the lay observations suggest any particular limitations, let alone limitations that are more restrictive than found by the ALJ, and therefore has failed to show harmful error in the ALJ's failure to discuss them. *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (holding that the ALJ "may not reject 'significant probative evidence' without explanation" (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984))).

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 10th day of June, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge